UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALFRED AUGUST** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3962** |
| **MARLIN GUSMAN, SHERIFF, DR. GORE,**<br>**SID OFFICERS, TIER DEPUTIES** | **SECTION "N"(4)** |

**REPORT AND RECOMMENDATION**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. No. 12)** filed by the defendants Orleans Parish Criminal Sheriff Marlin N. Gusman and Dr. Gore seeking dismissal of the plaintiff's claims as a matter of law. The plaintiff, Alfred August, has filed an Opposition (Rec. Doc. No. 14) to the motion. The motion, along with the entire case, was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**.

The Court held a hearing pursuant to *Spears v. McCotter*[1] on February 26, 2007, with the plaintiff, Alfred August, and counsel for the defendants participating by telephone.[2] Upon review

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991). The cassette tape of the hearing is being placed in the custody of the Court Recording Unit along with a copy of this report.

[2] Rec. Doc. No. 11.

of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

**I.      Factual Summary**

The plaintiff, Alfred August ("August"), is currently incarcerated in the Allen Correctional Center ("Allen") in Kinder, Louisiana. August filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman, Dr. Gore, unknown officers in the Special Investigation Division ("SID"), and unknown tier deputies, seeking monetary damages for the alleged untimely evacuation and unsafe conditions of confinement as a result of Sheriff Gusman's alleged negligence during Hurricane Katrina.[3]

**A.      The Complaint**

August alleges that he was housed in the Templeman Jail, Phase I, Tier B-1, within the Orleans Parish Prison system ("OPP") on August 29, 2005, when the events that form the basis of this lawsuit occurred. He claims that his cell was a medical unit located on the first floor. He alleges that he was housed there because he had previously had knee surgery. August alleges that Gusman and his deputies knew that Hurricane Katrina was approaching the City of New Orleans and that they had a duty to evacuate the inmates but failed to do so.

He claims, instead, he was abandoned for three days in the medical unit and the water rose to a waist high level. He also indicates that there was no food, water, or electricity. He further alleges that, after three days, the security staff came to get him. He was then helped upstairs and placed in a small room with other inmates. They still had no food, water, or medical attention.

---

[3]Rec. Doc. No. 1.

August further claims that, the next day, he was made to walk through deep water, loaded into a boat, and taken to the Broad Street bridge. He claims that remained on the bridge for six days without food, water, or medical attention, which left him weak and in need of fluids.

He was later transported by bus to the Elayn Hunt Correctional Center ("Hunt"). Upon arriving at Hunt, he was placed in a yard with other inmates, where he remained on the grass for three days and was bitten by bugs and mosquitoes. He further complains that he was not provided with medical attention during the six months he spent at Hunt.

August claims that, on March 3, 2006, he was transferred to the Forcht-Wade Correctional Center in Keithville, Louisiana, where he finally saw a doctor. He was eventually transferred to the Allen Correctional Center, where he remains housed. He seeks monetary damages as a result of the delay by the Sheriff and his agents, which caused him a great hardship and violated his civil rights.

**B.      The *Spears* Hearing**

August testified that he filed this lawsuit against the defendants because he was left in the prison without food or security during Hurricane Katrina. He stated that, at the time of the storm, he was housed in the medical unit of Templeman Jail, Phase I. He testified that he was recovering from surgery on his knee cap. He claimed that he had three surgeries in November of 2004 and June of 2005. He stated that he was in the medical unit because he had a post-operative infection.

August further testified that, even though he was in the medical unit, no prison officials came to see them before or during the storm. He stated that he had to help other sick inmates by walking on the bad knee even though it was not fully healed.

He stated that, when the water rose over the beds, he beat on the window to get help. He recalled that guards moved them early one morning after the water began to rise because the toilets

backed-up. He stated that he was moved to the second or third floor, where there was no ventilation. He and the other inmates remained in a gymnasium until they were transported by boat to the overpass.

He testified that he was told that the inmates would receive food and water, and instead they were forced to watch the deputies drink and eat. He acknowledged that he was eventually given one sip of water. August testified that he remained on the bridge from Monday to Friday following the storm.

August recalled that, on Friday, he was transported to Hunt. He claimed that he arrived at Hunt around 3:00 p.m. and was placed near the visitor's shed. He also stated that he was given a sandwich, a cup of water, and a blanket. He testified that he spent two to three days outside without a shower. He was later moved to another facility because the Hunt officials complained that they were not treating any inmates because they did not have the money.

August also testified that he filed suit against Sheriff Gusman because he could have done a better job of evacuating the inmates. August stated that he sued Dr. Gore as the doctor in charge and because he did not get proper medical treatment during and after the storm. August also testified that, because he was in the medical unit, he should have been one of the first inmates to be evacuated.

August further testified that he filed suit against the SID officers because they could have helped the inmates get out of the jail sooner. He acknowledged that he did not know the names of the other deputies who left him on the tier and he conceded that, unless he was able to do identify them, he would not be able to pursue his claim.

August also indicated that he has since seen a doctor at Allen because he broke his knee.  He testified that before the storm he was told that he needed a knee replacement which he has not had.

After the *Spears* Hearing, Sheriff Gusman and Dr. Gore filed the subject Motion for Summary Judgment seeking a dismissal of August's claims.  The defendants contend that the claims against Sheriff Gusman for failure to evacuate him should be dismissed because the plaintiff does not provide any proof that the sheriff was personally involved in the evacuation process or is otherwise liable under § 1983.

The defendants seek dismissal of the plaintiff's claims against Gusman and Dr. Gore for inadequate medical care because he was provided appropriate medical care prior to Hurricane Katrina.

## II.  Standards of Review

### A.  Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried.  *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party.  *Id*. at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence

of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

### B.     Review for Frivolousness

Title 28 U.S.C. §§ 1915(e)(2), 1915A, and Title 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss complaints filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle,* 789 F.2d 318 (5th Cir. 1986), *modified on other grounds, Booker v. Koonce,* 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under these statutes, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319 (1989); *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers,* 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez,* 504 U.S. 25, 32-33 (1992); *Neitzke,* 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy,* 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus,* 976 F.2d 268, 269 (5th Cir. 1992).

**III.   Analysis**

    **A.   Summary Judgment as to Sheriff Gusman**

Sheriff Gusman seeks summary dismissal of August's claims on the basis that he has failed to set forth allegations which would entitle him to relief. Specifically, Gusman alleges that August cannot demonstrate a constitutional violation with respect to the failure to evacuate him and has failed to show that Gusman was in anyway responsible for or involved in his medical care.

August has opposed the motion on the basis that Gusman is responsible for his failure to head the evacuation warnings from the governor and mayor. He further argues that Gusman is liable for the actions of those who answer to him.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the

progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 102-03 (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

A review of August's complaint and his *Spears* Hearing testimony fails to disclose any indication that Gusman was directly involved in the delayed evacuation. Instead, August contends that, as a result of the delay by the deputies, he was harmed. However, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate, whether a deputy or doctor, allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). A state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). August has not alleged that Sheriff Gusman was personally involved in the acts about which he complains.

August has also failed to show that the temporary conditions caused by the hurricane violated his constitutional rights. To prove that the conditions of his confinement violated the Constitution, an inmate must show, "that, from an objective standpoint, [they] denied him the minimal measure of necessities required for civilized living." *Farmer*, 511 U.S. at 834. An episodic act or omission of a state jail official does not violate an inmate's constitutional right to be secure in his basic human

needs unless he demonstrates that the official acted or failed to act with deliberate indifference to those needs. *Hare*, 74 F.3d at 633.

In this case, August also fails to allege that Sheriff Gusman was personally involved in his medical care. An official is deliberately indifferent to an inmate's medical needs or safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). August has not alleged that Sheriff Gusman was in any way personally aware of his medical condition, treatment, or any risk to his personal safety.

In this case, August does not allege and made no showing of an intentional indifference by Sheriff Gusman which is a necessary consideration under the Eighth Amendment. August does not allege that Sheriff Gusman ignored a <u>known</u> risk of danger to his safety or physical needs. The flooding as a result of the levee breaches after Hurricane Katrina passed through the metropolitan area was unprecedented and unexpected. Sheriff Gusman was under no constitutional burden to protect the plaintiff from the unknown.

Furthermore, to the extent August asserts that Sheriff Gusman acted negligently in responding to or preparing for this emergency situation, his federal claims are also subject to summary dismissal. Acts of negligence do not implicate the Due Process Clause such to give rise to a claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344 (1986). Allegations amounting to negligence cannot support a § 1983 claim for violation of the Eighth Amendment. *Eason v. Thaler*, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (noting no negligent deprivation of religious rights or gross negligence in permitting a gas leak to occur); *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (finding no negligent

9

failure to protect); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (noting that negligent medical care does not constitute a valid claim under § 1983); *Doe v. Taylor Indept. School Dist.*, 975 F.2d 137, 142 (5th Cir. 1992), *vacated on other grounds*, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.")

Without a showing of a deliberate indifference, August's claims must fail as a matter of law. The Motion for Summary Judgment should be granted and the claims against Sheriff Gusman dismissed.

### B. Summary Judgment as to Dr. Gore

The defendants also seek summary judgment with respect to August's claim that Dr. Gore was indifferent to his medical needs when he was left in the medical unit without medical attention for his infected knee and high blood pressure during and immediately following Hurricane Katrina. August opposes the motion on the basis that the medical staff was indifferent to his medical condition when he was left in the prison and forced to endure rising, dirty water.

The Court notes that August does not challenge the quality of care provided to him before Hurricane Katrina. His claims before this Court challenge the lack of care provided to inmates housed in the medical unit during the storm and upon being evacuated from the prison. He suggests that he should have been removed from the prison before the storm to assure that he received adequate care for his conditions.

Inadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to the prisoner's

serious medical needs which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards and excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 534 (citing *Farmer*, 511 U.S. at 837). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

In *Estelle*, the Supreme Court concluded that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 97 (citation omitted, footnotes omitted). To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety," *Stewart*, 174 F.3d at 533 (*quoting Farmer*, 511 U.S. at 837).

For an official to act with deliberate indifference, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (*quoting Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves,* 27 F.3d at 176 (citing *Farmer*, 511 U.S. at 842 & n.8).

In the instant matter, August contends that at the time the storm approached New Orleans, he was in the medical unit of Templeman Jail, Phase I, recuperating from knee surgery that took place in June 2005 and an ensuing infection. He also claims that he suffered with high blood pressure. He testified that despite his medical condition, neither Dr. Gore nor any member of the medical staff remained at the prison to care for him and the other inmates in the medical unit.

He alleges that Dr. Gore had previously provided medical care to him and was aware of his medical condition. He also suggests that Dr. Gore should have assured that the inmates in the medical unit were evacuated first, rather than abandoned. As a result, he was forced to do things contrary to his medical restrictions to assist other ailing inmates to safety. August also complains that, despite Dr. Gore's knowledge of his medical condition the doctor failed to provide him with any medical attention. As a result, he received no medical care until he reached the second evacuation facility, Forcht-Wade Correctional Center.

Dr. Gore bases the motion for summary judgment on the medical records which reflect that August received consistent medical care prior to the events surrounding Hurricane Katrina. The facts and issues not addressed by the motion are those raised by the plaintiff. The plaintiff argues that Dr. Gore knew of his condition and failed to assure adequate care during and after the storm.

As noted above, he has not challenged the care he received before the storm. Thus, even a thorough review of the medical records attached fails to clarify the issue of whether Dr. Gore knew of August's need for medical care and failed to adequately assure that he received due care. These facts are still at issue and are not resolved by a review of the summary judgment evidence presented by Dr. Gore.

For these reasons, the court cannot find that Dr. Gore is entitled to judgment as a matter of law. Genuine issues of material fact still exist regarding claim of medical indifference during and after the arrival of Hurricane Katrina while he was still in Templeman under Dr. Gore's care. The motion for summary judgment as to Dr. Gore must be dismissed.

### C.      Review for Frivolousness

August also attempts to name as defendants unknown SID officers and unknown tier deputies whom he claims failed to timely evacuate him or provide other assistance. During the *Spears* Hearing, August acknowledged that he did not know the identity of these defendants and conceded that he could not pursue claims against these unknown persons. The claims against these unidentified defendants fail to state a claim for which relief can be granted and are otherwise frivolous.

### IV.     Recommendation

It is therefore **RECOMMENDED** that the Motion for Summary Judgment (Rec. Doc. No. 12) filed by Sheriff Marlin Gusman and Dr. Gore should be **GRANTED in part** to **DISMISS WITH PREJUDICE** August's § 1983 claims against Sheriff Marlin Gusman and **DENIED in part** as to August's § 1983 medical indifference claims against Dr. Gore. The medical indifference claims against Dr. Gore should be allowed to proceed forward.

It is further **RECOMMENDED** that August's § 1983 claims against the unidentified SID officers and unknown tier deputies be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to Title 28 U.S.C. § 1915(e)(2) and § 1915A and Title 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this ____9th____ day of January, 2008.

　

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**KAREN WELLS ROBY**
　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**