UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| ALFRED AUGUST | CIVIL ACTION |
|---|---|
| VERSUS | NO. 06-3962 |
| MARLIN GUSMAN, SHERIFF, DR. GORE, SID OFFICERS, TIER DEPUTIES | SECTION "N"(4) |

## REPORT AND RECOMMENDATION

Before the Court is a **Motion for Summary Judgment (Rec. Doc. No. 26)** filed by the Defendant, Dr. Samuel Gore, seeking dismissal of the Plaintiff's claims as a matter of law. The motion, along with the entire case, was referred to a United States Magistrate Judge to conduct a hearing, including an Evidentiary Hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **Title 42 U.S.C. § 1997e(c)(1) and (2)**. The Court held a hearing pursuant to *Spears v. McCotter*[1] on February 26, 2007, with the Plaintiff, Alfred August, and counsel for the Defendants participating by telephone.[2] Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. *Spears*, 766 F.2d at 180. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barrientos*, 926 F.2d 480, 481 (5th Cir. 1991). The cassette tape of the hearing was placed in the custody of the Court Recording Unit along with a copy of the Report and Recommendation issued on January 9, 2008, Rec. Doc. No. 21.

[2] Rec. Doc. No. 11.

**I.     Factual Summary**

The Plaintiff, Alfred August ("August"), is currently housed in a work release facility in Port Allen, Louisiana. August filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff Marlin Gusman, Dr. Samuel Gore, unknown officers in the Special Investigation Division ("SID"), and unknown tier deputies, seeking monetary damages for the alleged untimely evacuation and unsafe conditions of confinement as a result of Sheriff Gusman's alleged negligence during Hurricane Katrina.[3] Dr. Gore is the only Defendant who has not been dismissed by prior order of the Court.[4]

**A.     The Complaint**

August alleges that he was housed in the Templeman Jail, Phase I, Tier B-1, within the Orleans Parish Prison system ("OPP") on August 29, 2005, when the events that form the basis of this lawsuit occurred. He claims that his cell was a medical unit located on the first floor. He alleges that he was housed there because he had previously had knee surgery. August also alleges that Sheriff Gusman and his deputies knew that Hurricane Katrina was approaching the City of New Orleans and that they had a duty to evacuate the inmates but failed to do so.

He claims, instead, that he was abandoned for three days in the medical unit and the water rose to a waist high level. He also indicates that there was no food, water, or electricity. He further alleges that, after three days, the security staff came to get him. He was then helped upstairs and placed in a small room with other inmates. They still had no food, water, or medical attention.

---

[3] Rec. Doc. No. 1.

[4] Rec. Doc. No. 23.

August further claims that, the next day, he was made to walk through deep water, loaded into a boat, and taken to the Broad Street bridge. He claims that he remained on the bridge for six days without food, water, or medical attention, which left him weak and in need of fluids.

He was later transported by bus to the Elayn Hunt Correctional Center ("Hunt"). Upon arriving at Hunt, he was placed in a yard with other inmates, where he remained on the grass for three days and was bitten by bugs and mosquitoes. He further complains that he was not provided with medical attention during the six months he spent at Hunt.

August also claims that, on March 3, 2006, he was transferred to the Forcht-Wade Correctional Center in Keithville, Louisiana, where he finally saw a doctor. He was eventually transferred to the Allen Correctional Center ("Allen"), where he was housed at the time of the hearing. He seeks monetary damages as a result of the delay by the Sheriff, his agents, and Dr. Gore, which caused him a great hardship and violated his civil rights.

### B. The *Spears* Hearing

August testified that he filed this lawsuit against the Defendants, because he was left in the prison without food or security during Hurricane Katrina. He stated that, at the time of the storm, he was housed in the medical unit of Templeman Jail, Phase I. He testified that he was recovering from surgery on his knee cap. He claimed that he had three surgeries in November of 2004 and June of 2005. He stated that he was in the medical unit, because he had a post-operative infection.

August further testified that, even though he was in the medical unit, no prison officials came to see him or his fellow inmates before or during the storm. He stated that he had to help other sick inmates by walking on the bad knee, even though it was not fully healed.

3

He stated that, when the water rose over the beds, he beat on the window to get help. He recalled that guards moved them early one morning after the water began to rise, because the toilets backed-up. He stated that he was moved to the second or third floor, where there was no ventilation. He and the other inmates remained in a gymnasium until they were transported by boat to the overpass.

He testified that he was told that the inmates would receive food and water, and instead they were forced to watch the deputies drink and eat. He acknowledged that he was eventually given one sip of water. August testified that he remained on the bridge from Monday to Friday following the storm.

August recalled that, on Friday, he was transported to Hunt. He claimed that he arrived at Hunt around 3:00 p.m. and was placed near the visitor's shed. He also stated that he was given a sandwich, a cup of water, and a blanket. He testified that he spent two to three days outside without a shower. He was later moved to another facility, because the Hunt officials complained that they were not treating any inmates because they did not have the money.

August also testified that he filed suit against Sheriff Gusman, because he could have done a better job of evacuating the inmates. August stated that he sued Dr. Gore as the doctor in charge and because he did not get proper medical treatment during and after the storm. August also testified that, because he was in the medical unit, he should have been one of the first inmates to be evacuated.

August further testified that he filed suit against the SID officers, because they could have helped the inmates get out of the jail sooner. He acknowledged that he did not know the names of

4

the other deputies who left him on the tier and he conceded that, unless he was able to do identify them, he would not be able to pursue his claim.

August also indicated that he saw a doctor at Allen because he broke his knee. He testified that, before the storm, he was told that he needed a knee replacement, which he has not had.

## II.  Procedural Background

After the *Spears* Hearing, Sheriff Gusman and Dr. Gore filed a Motion for Summary Judgment (Rec. Doc. No. 12) seeking dismissal of August's claims. In that motion, the Defendants argued that the claims against Sheriff Gusman for failure to evacuate him should be dismissed because August did not provide any proof that the Sheriff was personally involved in the evacuation process or was otherwise liable under § 1983. The Defendants also sought dismissal of August's claims against Sheriff Gusman and Dr. Gore for inadequate medical care, because he was provided appropriate medical care prior to Hurricane Katrina.

On January 9, 2008, the undersigned issued a Report and Recommendation recommending that the motion be granted in part to dismiss the claims against Sheriff Gusman, and denied in part as to Dr. Gore on the basis that, while the motion addressed the care August received prior to Hurricane Katrina, it did not address August's claims regarding the medical care provided during and after Hurricane Katrina.[5] The Court also recommended dismissal of August's § 1983 claims against the SID officers and unidentified tier deputies as frivolous. The Court adopted the Report and issued judgment accordingly.[6]

---

[5]Rec. Doc. No. 21.

[6]Rec. Doc. No. 22, 23.

5

Thereafter, on July 29, 2008, the undersigned held a preliminary conference pursuant to Fed. R. Civ. P. 16 to obtain consent of the parties under Title 28 U.S.C. § 636(c) and to schedule pretrial and trial dates.[7] At the conference, the parties indicated their intent to consent. However, since that time, August has failed to return a signed consent form after repeated attempts by the Court to obtain one.

Prior to the preliminary conference, Dr. Gore filed the instant motion, again seeking summary judgment dismissal of August's claims on the basis that the summary judgment evidence reflects that August received adequate care during and after Hurricane Katrina. August has not filed an opposition.

### III.     **Standards of Review for Motion for Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Fields v. City of Southern Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991). The Court's task is not to resolve disputed issues of fact, but to determine whether there exists any factual issues to be tried. *See Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party. *Id.* at 248.

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the

---

[7]Rec. Doc. No. 30.

moving party carries its burden of proving that there is no material factual dispute, the burden shifts to the nonmovant "to show that summary judgment should not lie." *Hopper v. Frank*, 16 F.3d 92, 96 (5th Cir. 1994). While the court must consider the evidence with all reasonable inferences in the light most favorable to the nonmovant, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Instead, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue of fact for trial." *Celotex Corp*, 477 U.S. at 324. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *See Szabo v. Errisson*, 68 F.3d 940, 942 (5th Cir. 1995); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994).

**IV.** **Analysis**

August testified that he sued Dr. Gore as the doctor in charge of the medical unit at OPP and because he did not receive proper medical treatment during and after the storm. He challenges the lack of care provided to inmates housed in the medical unit during the storm and upon being evacuated from the prison. He also urges that he should have been removed from the prison before the storm to assure that he received adequate care for his conditions. Dr. Gore seeks summary dismissal of August's claims on the basis that he has failed to demonstrate a constitutional violation with respect to his medical care at OPP after Hurricane Katrina.

7

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 102-03 (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Therefore, an episodic act or omission of a state jail official does not violate an inmate's constitutional right to be secure in his basic human needs unless he demonstrates that the official acted or failed to act with deliberate indifference to those needs. *Hare v. City of Corinth, Ms.*, 74 F.3d 633, 641-42, 646 (5th Cir. 1996).

For a prison official to act with deliberate indifference, "'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (*quoting Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves,* 27 F.3d at 176 (citing *Farmer*, 511 U.S. at 842 & n.8).

Inadequate medical care by a prison doctor can result in a violation of the Eighth Amendment for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to the prisoner's serious medical needs which constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Stewart v. Murphy* 174 F.3d 530, 533 (5th Cir. 1999)

(*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Harris v. Hegmann*, 198 F.3d 153 (5th Cir. 1999).

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court concluded that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Id.*, 429 U.S. at 97 (citation omitted, footnotes omitted). Thus, to state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety," *Stewart*, 174 F.3d at 533 (*quoting Farmer*, 511 U.S. at 837).

Thus, under this "deliberate indifference" standard, a prison doctor is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 534 (citing *Farmer*, 511 U.S. at 837). While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

Under the standards for review of a summary judgment set forth above, Dr. Gore must demonstrate the absence of a genuine issue of material fact. *Myles v. Lynaugh*, 56 F.3d 1385, 1995

9

WL 337728 at *2 (5th Cir. 1995) (Table, Text in Westlaw). If this burden is met, the burden shifts to August to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id*. (citations omitted). August has not opposed the motion or provided any affidavits or other summary judgment evidence since the defendants filed the instant summary judgment motion. The Court, however, does have August's sworn statements at the *Spears* hearing, outlined above. This is competent summary judgment evidence. *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir.1988).

In the instant matter, August contends that, at the time the storm approached New Orleans, he was in the medical observation unit of Templeman Jail, Phase I recuperating from knee surgery that took place in June of 2005 and an ensuing infection. He also claims that he suffered with high blood pressure. He testified that despite his medical condition, neither Dr. Gore nor any member of the medical staff remained at the prison to care for him and the other inmates in the medical unit during the storm.

He alleges that Dr. Gore had previously provided medical care to him and was aware of his medical condition. He also suggests that Dr. Gore should have assured that the inmates in the medical unit were evacuated first, rather than abandoned. As a result, he was forced to do things contrary to his medical restrictions to assist other ailing inmates to safety. August also complains that, despite Dr. Gore's knowledge of his medical condition, the doctor failed to provide him with any medical attention. As a result, he received no medical care until he reached the second evacuation facility, Forcht-Wade Correctional Center.

In support of his summary judgment motion, Dr. Gore submits his affidavit in which he attests that each of the inmates on August's medical tier were provided with one-week of medication

to sustain them through the storm.[8] This conflicts with the sworn testimony given by August. It also is not a specific showing that August in fact received the blood pressure and other medications he claims he went without. Furthermore, this assertion seems to demonstrate that medical personnel, including Dr. Gore, were aware of or planned for the possibility that the inmates would be without their attention for up to one week. Perhaps this does not resolve the factual issues or the legal question as to whether Dr. Gore was aware of a known risk in light of the provisions made with the medication.

Dr. Gore also alleges that, when the water began to rise, August's dormitory on the MOU[9] handicapped tier was the first dorm to be evacuated. Dr. Gore does not indicate how this is part of his personal knowledge or whether he was present for or ordered that evacuation. This also tends to confirm August's allegation that he was in the dormitory when the water was rising. At the same time, it does not respond to August's allegations that the personnel conducting the post-flood evacuation failed to provide physical assistance in light of his known impairments.

Dr. Gore next attests that he did not personally attend to August on the Broad Street bridge nor did August request attention from him on the bridge. The inferences to be drawn are that: (1) Dr. Gore was present on the bridge and available to be called upon for medical assistance; (2) he failed to make his presence known; and/or (3) he neglected to locate the inmates who had been under his care. Nevertheless, this is not dispositive of August's allegations as a matter of law.

In this case, Dr. Gore has not resolved the factual allegations or demonstrated that there remain no genuine factual issues to be resolved by trial. For these reasons, the Court cannot find

---

[8]Rec. Doc. No. 26-5, Affidavit of Dr. Samuel Gore.

[9]MOU stands for medical observation unit.

that Dr. Gore is entitled to judgment as a matter of law. The motion for summary judgment should be denied.

## V. Recommendation

It is therefore **RECOMMENDED** that the Motion for Summary Judgment (Rec. Doc. No. 26) filed by Dr. Samuel Gore be **DENIED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 30th day of December, 2008.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**